CLERK
U.S. DISTRICT COURT
IN THE UNITED STATES DISTRICT COURT DISTRICT OF NEW JERSEY
FOR THE DISTRICT OF NEW JERSEY     RECEIVED

2023 JUL 14 P 2: 43

| | |
|---|---|
| UNITED STATES OF AMERICA<br>*ex rel.* AIDAN FORSYTH,<br><br>Plaintiffs,<br><br>v.<br><br>AMERICAN FINANCIAL RESOURCES,<br>INC., and RICHARD DUBNOFF,<br><br>Defendants. | CIVIL FILE NO.: _____<br><br>**COMPLAINT AND DEMAND FOR<br>JURY TRIAL**<br><br>FILED UNDER SEAL PURSUANT TO<br>31 U.S.C. § 3730(b)(2) |

## INTRODUCTION

1.      This is a *qui tam* action brought against defendants American Financial Resources, Inc. ("AFR"), and Richard Dubnoff ("Dubnoff"), (jointly, "Defendants") under the False Claims Act, 31 U.S.C. § 3729, et seq. ("FCA" or "Act"), to recover damages and civil penalties on behalf of the United States of America ("United States").

2.      In addition to damages and civil penalties, relator Aidan Forsyth ("Forsyth" or "Relator") also seeks to recover on his own behalf the maximum relator's share and attorneys' fees, expenses, costs, prejudgment interest, and other relief permitted under the FCA.

3.      The FCA *qui tam* allegations in this complaint ("Complaint") arise from Defendants' misconduct and practices concerning their unlawful receipt and retention of first-draw Paycheck Protection Program ("PPP") funds from the Small Business Administration ("SBA"), as summarized below.

## AFR PPP LOAN

4.      Shortly before April 28, 2020, Defendants knowingly submitted, or caused others to submit, a loan application and loan-related information for a first draw PPP loan in the amount of $5,108,500.

5.      The application falsely stated AFR was eligible for a first draw PPP loan, when in fact, as Defendants well knew, AFR was ineligible because it was a mortgage company engaged in lending and holding mortgages, and also because, AFR did not meet PPP's need requirements.

6.      Shortly after on or about April 28, 2020, Defendants received $5,108,500 in first-draw PPP funds, SBA loan number 7035987204 (the "AFR PPP Loan").

7.      Prior to January 31, 2022, Defendants applied for forgiveness of the AFR PPP Loan.

8.      On or about January 31, 2021, SBA partially forgave the principal amount of the AFR PPP Loan plus accrued interest, in the amount of $ 4,837,748.

9.      Upon information and belief, Defendants have not repaid any of the forgiven funds.

10.     The conduct described above, and alleged elsewhere in this Complaint, violated 31 U.S.C. §§ 3729(a)(1)(A), (a)(1)(B), and (a)(1)(G).

11.     As a result of Defendants' PPP fraud, the United States suffered economic losses and is entitled to treble damages and maximum civil penalties, the precise amount of which will be determined at trial.

## PARTIES, ENTITIES AND PERSONS

### Relator Forsyth

12.     Relator Forsyth is a resident of New York, New York.

2

## The United States

13.    The United States, acting through SBA, and supported by the U.S. Department of Treasury, is the real party-plaintiff-in-interest in the *qui tam* claims in this action.

14.    SBA's headquarters is located at 409 Third Street, SW, Washington, D.C. 20416.

15.    SBA was created in 1953 as an independent agency of the United States government ("Government") to aid, counsel, assist, and protect the interests of small business concerns, to preserve free competitive enterprise, and to maintain and strengthen the overall U.S. economy.

16.    Among other mandates, SBA assists small businesses in recovering from economic disasters, such as the coronavirus pandemic that adversely affected the U.S. economy beginning in early 2020.

17.    One of the instruments available to SBA in circumstances like the COVID-19 pandemic is the provision of forgivable low-interest loans to qualified borrowers.

## Defendant AFR

18.    Defendant AFR is a privately-owned, full-service residential mortgage lender, with a focus on specialty lending for the purchases of manufactured homes. AFR is located at 8 Campus Dr #401 Parsippany, NJ 07054. AFR is a family-owned and -operated Subchapter S corporation. AFR reportedly has 500 employees and annual revenues of $135.2 million.

19.    Upon information and belief, AFR holds mortgages for more than 14 days.

## Defendant Dubnoff

20.    Defendant Dubnoff is the CEO of defendant AFR.

3

## Non-Party PPP Lender Northeast Bank

21.     Northeast Bank is a Maine-based full-service financial institution with headquarters at 27 Pearl Street Portland, Maine 04101 (telephone numbers: (207) 774-1426 and (800) 284-5989).

22.     SBA contracted with numerous banks and other financial institutions to serve as PPP loan processors, underwriters, and lenders during 2020 and 2021.

23.     Northeast Bank was among those lending companies that contracted with SBA to process, underwrite, and make PPP loans.

24.     Defendants submitted, or caused others to submit the AFR PPP Loan and loan-related information to Northeast Bank, including the request for SBA to forgive the AFR PPP loan.

## JURISDICTION AND VENUE

25.     This Court has original subject matter jurisdiction over the FCA *qui tam* claims alleged in this Complaint under 28 U.S.C. § 1331 (federal question) and 31 U.S.C. § 3732(a) (False Claims Act).

26.     This Court has personal jurisdiction over Defendants under 31 U.S.C. § 3732(a) because Defendants can be found, reside, or transact business in this district. Section 3732(a) of the FCA further provides for service of process at any place within or outside the United States.

27.     Venue is proper in this district under 31 U.S.C. § 3732(a) and 28 U.S.C. § 1391 because Defendants can be found, reside, and transact business in this district; acts proscribed by 31 U.S.C. § 3729 occurred within this district; and a substantial part of the events or omissions giving rise to the *qui tam* claims alleged in this Complaint occurred in this district.

## FCA SUBJECT MATTER JURISDICTION

28.    Relator brings this *qui tam* action pursuant to 31 U.S.C. 3730(b).

29.    Upon information and belief, none of the subject matter or other jurisdictional bars, preclusions, restrictions, or limitations set forth in Section 3730 of the FCA is applicable to this action.

## LIABILITY, DAMAGES, AND AWARDS UNDER THE FCA

30.    The FCA imposes civil liability on "any person" who, among other things:

> (A) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval;

> (B) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim;…or

> (G) knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government.

31 U.S.C. §§ 3729(a)(1)(A), (B) and (G).

31.    Section 3729(b)(1) of the Act defines the terms "knowing" and "knowingly" to

> (A) mean that a person, with respect to information—

> (i) has actual knowledge of the information;

> (ii) acts in deliberate ignorance of the truth or falsity of the information; or

> (iii) acts in reckless disregard of the truth or falsity of the information; and

> (B) require no proof of specific intent to defraud.

31 U.S.C. § 3729(b)(1).

32.    Section 3729(b)(2) of the Act defines "claim" to mean any request or demand, whether under a contract or otherwise, for money or property and whether or not

the United States has title to the money or property, that (i) is presented to an officer, employee, or agent of the United States; or (ii) is made to a contractor, grantee, or other recipient, if the money or property is to be spent or used on the Government's behalf or to advance a Government program or interest, and if the United States Government (I) provides or has provided any portion of the money or property requested or demanded, or (II) will reimburse such contractor, grantee, or other recipient for any portion of the money or property which is requested or demanded. 31 U.S.C. § 3729(b)(2)(A) (as amended May 20, 2009; the prior version is materially identical for purposes of this action).

33.    Section 3729(b)(3) of the Act defines the term "obligation" to mean an established duty, whether or not fixed, arising from an express or implied contractual, grantor-grantee, or licensor-licensee relationship, from a fee-based or similar relationship, from statute or regulation, or from the retention of any overpayment.

34.    Section 3729(b)(4) of the Act defines the term "material" to mean having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property.

35.    Section 3729(a) of the Act provides that any person who knowingly violates the FCA is liable to the United States for a civil penalty of not less than $5,000 and not more than $10,000, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990 (28 U.S.C. 2461, Public Law 104-410), which currently sets the minimum penalty at $13,508 and the maximum penalty at $27,018, plus three times the amount of damages the Government sustains because of an act of that person.

36.    Section 3730(d) of the Act provides that where the Government intervenes in and proceeds with an action commenced by the filing of a *qui tam* complaint pursuant

to 31 U.S.C. § 3730(b), and recovers money or property from a defendant under Section 3729, the person who initiated the action (known as the "relator"), shall receive between fifteen percent (15%) and twenty-five percent (25%) of the proceeds, subject to certain exceptions and limitations, none of which applies here.

37.    Where the Government does not intervene in the *qui tam* action and the relator pursues it without the Government's involvement and recovers proceeds from a defendant under Section 3729, the relator, again, subject to certain exceptions and limitations that do not apply here, shall receive between twenty-five percent (25%) and thirty percent (30 %) of the proceeds. 31 U.S.C. § 3730(b).

38.    Whether the Government intervenes in the matter or not, the relator in a successful *qui tam* action is also entitled to an award against the defendant for the amount of all reasonable expenses, attorneys' fees, and costs incurred in pursuing the *qui tam* claims. *Id.*

## FCA'S STATUTE OF LIMITATIONS

39.    A *qui tam* claim under section 3730(b) of the FCA may not be brought (1) more than 6 years after the date on which the violation of section 3729 is committed, or (2) more than 3 years after the date when facts material to the right of action are known or reasonably should have been known by the official of the United States charged with responsibility to act in the circumstances, but in no event more than 10 years after the date on which the violation is committed, wbichever occurs last. 31 U.S.C. § 3731(b).

## PPP LAWS, REGULATIONS, RULES AND FORMS

### CARES Act and Related Legislation

40.    On March 13, 2020, President Trump declared the ongoing Coronavirus Disease 2019 (COVID–19) pandemic of sufficient severity and magnitude to warrant an emergency declaration for all states, territories, and the District of Columbia.

41.    On March 27, 2020, the President signed into law the Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act") (Pub. L. 116–136) to provide emergency assistance and health care response for individuals, families, and businesses affected by the coronavirus pandemic.

42.    Section 1102 of the CARES Act temporarily permitted SBA to guarantee 100 percent of so-called "7(a) loans" under a new program titled the "Paycheck Protection Program," pursuant to section 7(a)(36) of the Small Business Act (15 U.S.C. 636(a)(36)). Section 1106 of the CARES Act provided for forgiveness of up to the full principal amount of qualifying loans guaranteed under the Paycheck Protection Program. PPP loans were available at a 1 % interest rate.

43.    During 2020, the President signed into law four acts supplementing the CARES Act, namely: the Paycheck Protection Program and Health Care Enhancement Act ("Enhancement Act") (Pub. L. 116–139) on April 24, 2020; the Paycheck Protection Program Flexibility Act of 2020 ("Flexibility Act") (Pub. L. 116–142) on June 5, 2020; Public Law 116–147 ("PL 116-147") on July 4, 2020; and the Economic Aid to Hard-Hit Small Businesses, Nonprofits, and Venues Act ("Economic Aid Act") (Pub. L. 116–260) on December 27, 2020.

## PPP Governing Regulations

44.    PPP was added to, and included within, SBA's existing Section 7(a) loan program. also 15 U.S.C. § 636(a)(36).

45.    Unless expressly excepted, PPP eligibility issues were governed by SBA's general rules and regulations concerning small business loans. See, e.g., SBA Interim Final Rule, 20811 Federal Register April 15, 2020. ("Businesses that are not eligible for PPP loans are identified in 13 CFR 120.110 and described further in SBA's Standard Operating Procedure (SOP) 50 10, Subpart B, Chapter 2")

46.    13 CFR § 120.110 sets forth a list of specific types of businesses, organizations and borrowers that are ineligible for SBA business loans generally.

47.    "Financial businesses primarily engaged in the business of lending, such as banks, finance companies, and factors" are listed among such borrowers that are ineligible for SBA business loans generally.

48.    Financial lending businesses have never received an exemption from the restrictions of 13 CFR § 120.110 to permit them to participate in PPP.

49.    Effective April 1, 2019, SBA issued Standard Operating Procedure ("SOP") SOP 50 10 5(K) as guidance for the Section 7(a) loan program. This included an elucidation on various types of ineligible borrowers. *Id.* at Subpart B, Section III.

50.    SOP 50 10 5(K) reaffirms 13 CFR § 120.110 directive that:

a.    "Ineligible Types of Businesses" include "Businesses Engaged in Lending, "including, "Mortgage companies that make loans and hold them in their portfolio."

b.    A mortgage servicing company that disburses loans and sells them within 14 calendar days of the loan closing, however, is eligible. And,

c.       Mortgage companies primarily engaged in the business of servicing loans are also eligible."

*Id*. See also SBA SOP 50 10 6, Part 2, Section A, Chapter 3, Subsection (A)(2)(b)(iii) (effective October 1, 2020) (same).

## PPP LENDING HISTORY AND REGULATIONS

51.       Congress offered PPP loans in two separate rounds or "draws."

52.       The first-draw application period began in or about March 2020 and ended in or about May 2020.

53.       The second-draw application period, which was available for certain eligible first-draw borrowers, began in or about January 2021 and ended in or about March 2021.

54.       In total, PPP borrowers received over $800 billion in guaranteed, low-interest and forgivable loans.

55.       Because of the overwhelming need to disburse financial relief as quickly as possible to small businesses during the early stages of the coronavirus pandemic, SBA did not require stringent lending oversight on individual PPP loan applications requesting less than $2 million. Accountability gave way to efficiency.

56.       SBA effectively created an "honor system" among the applicants, the lenders, and SBA.

57.       SBA's Office of Inspector General ("OIG") has since publicly acknowledged that there was massive fraud in the applications for, and receipt of, PPP funds.

58.    On September 14, 2022, the U.S. Department announced the establishment of a COVID-19 fraud strike force to combat rampant COVID-19 relief program fraud, including PPP.

**PPP First Draw Rules and Regulations**

59.    PPP rules required the funds for first-draw loans to be expended solely on "authorized purposes," also referred to as, "allowable uses" or "permissible expenses"; "authorized purposes" included payroll costs, covered mortgage interest payments, covered rent payments, and covered utilities.

60.    PPP rules defined "payroll costs" to include wages, salaries, tips, and commissions, as well as certain non-cash employment benefits: employer contributions to defined-benefit or defined-contribution retirement plans; payment for the provision of group health care coverage, including insurance premiums; payment of state and local taxes assessed on employee compensation; and costs for employee vacation, parental, family, medical, and sick leave.

61.    The CARES Act excluded from the definition of "payroll costs" for PPP loan application purposes any employee compensation in excess of an annual salary of $100,000.

62.    PPP rules and regulations also precluded a borrower from including as payroll costs payments made to self-employed, independent contractors ("1099 Employees") and to persons not residing in the United States.

63.    To be a qualified borrower for PPP purposes, a small business (or nonprofit organization) had to be in existence on February 15, 2020, and have employees for whom it paid salaries and payroll taxes or have paid independent contractors, as reported on IRS Forms 1099-MISC.

64.    The borrower could be an independent contractor, eligible self-employed individual, sole proprietorship, or organization employing no more than 500 employees (with certain exceptions allowing a greater number).

### SBA Form 2483

65.    To obtain PPP funding, the eligible and qualified borrower had to prepare and submit to a participating lender an SBA PPP loan application form ("Form 2483"), signed by the borrower or an agent or representative, as well as certain supporting documentation and information.

66.    Form 2483 was revised a number of times, but the original version was dated 04/20.

67.    Form 2483 required the borrower to specify, among other details, its (a) "Average Monthly Payroll" and (b) "Number of Employees."

68.    Under PPP rules, the Average Monthly Payroll and Number of Employees figures were used to set the maximum amount of funds the borrower was eligible to receive.

69.    That maximum sum was calculated as the borrower's Average Monthly Payroll during a prescribed period multiplied by 2.5, with certain adjustments if the borrower had received an SBA Economic Injury Disaster Loan ("EIDL").

70.    The average monthly payroll cost was derived by aggregating allowable payroll costs from the prior twelve months (with certain exceptions) for employees whose principal place of residence was the United States and subtracting compensation paid to any employee in excess of an annual salary of $100,000. That figure was then divided by twelve to arrive at the average monthly payroll cost. Regardless of the borrower's actual calculated average monthly payroll, the maximum PPP for any single loan could not exceed $10 million.

71.     Form 2483 further required applicants to specify the purpose of the loan, namely, "Payroll," "Lease/Mortgage Interest," "Utilities," or "Other," the last of which required the applicant to "explain."

72.     Form 2483 also required the borrower to affirm, among other things, having read and understood Form 2483 and the borrower's eligibility to receive a PPP loan under the SBA rules in effect at the time the application was submitted.

73.     Form 2483 required the borrower to certify (by initialing) that:

> All SBA loan proceeds will be used only for business-related purposes as specified in the loan application and consistent with the Paycheck Protection Program Rule.

74.     Form 2483 required the borrower to certify (by initialing) that:

> Current economic uncertainty makes this loan request necessary to support the ongoing operations of the Applicant.

75.     Form 2483 required the borrower to certify (by initialing) that:

> The funds will be used to retain workers and maintain payroll or make mortgage interest payments, lease payments, and utility payments, as specified under the Paycheck Protection Program Rule. I understand that if the funds are knowingly used for unauthorized purposes, the federal government may hold me legally liable, such as for charges of fraud.

76.     Form 2483 required the borrower to certify (by initialing) that:

> I understand that loan forgiveness will be provided for the sum of documented payroll costs, covered mortgage interest payments, covered rent payments, and covered utilities, and not more than 25% of the forgiven amount may be for non-payroll costs.

77.     Form 2483 required the borrower to certify (by initialing) that:

> During the period beginning on February 15, 2020, and ending on December 31, 2020, the Applicant has not and will not receive another loan under the Paycheck Protection Program.

78.    Form 2483 required the borrower to certify as follows:

> I further certify that the information provided in this application and
> the information provided in all supporting documents and forms is
> true and accurate in all material respects. I understand that
> knowingly making a false statement to obtain a guaranteed loan
> from SBA is punishable under the law, including under 18 U.S.C.
> 1001 and 3571 by imprisonment of not more than five years and/or
> a fine of up to $250,000; under 15 U.S.C. 645 by imprisonment of
> not more than two years and/or a fine of not more than $5,000; and,
> if submitted to a federally insured institution, under 18 U.S.C. 1014
> by imprisonment of not more than thirty years and/or a fine of not
> more than $1,000,000.

### PPP Loan Application Processing

79.    First-draw PPP loans were processed by SBA-authorized participating lenders.

80.    To obtain the requested loan amount, prospective borrowers were required to provide the lenders, among other things, the Form 2483 and supporting loan application documentation, such as IRS or state revenue department forms showing periodic employment and unemployment tax information for the borrower, such as IRS Forms 940 (Employer's Annual Federal Unemployment ("FUTA") Tax Return), 941 (Employer's Quarterly Federal Tax Return), W-2 (Wage and Tax Statement), and W-3 (Transmittal of Wage and Tax Statements) for the employees the borrower was claiming.

81.    Where the PPP loan application was approved, the participating lender funded the PPP loan using its own monies, which the SBA guaranteed 100%.

82.    At or about the time PPP loans were approved, the lenders conveyed the borrowers' loan application information to the SBA.

### PPP Loan Forgiveness

83.    The PPP rules as finally implemented required, for loan forgiveness purposes, that the PPP funds be expended for authorized purposes during the 24-week

period following receipt of the loan proceeds and that at least 60% of the loan proceeds were used for covered payroll expenses.

84.     Approved borrowers seeking forgiveness were required by the terms of Form 2483 to provide the lenders with documentation verifying the number of full-time equivalent employees on the borrower's payroll as well as the dollar amounts of payroll costs, covered mortgage interest payments, covered rent payments, and covered utilities for the 24-week period following receipt of the loan proceeds.

### SBA Form 3508

85.     To obtain PPP loan forgiveness borrowers had to submit an SBA Form 3508 to the lender according to the instructions set out in SBA Form 3508EZ.

86.     Form 3508 required the borrower to certify that:

> The dollar amount for which forgiveness is requested: was used to pay costs that are eligible for forgiveness (payroll costs to retain employees; business mortgage interest payments; business rent or lease payments; or business utility payments);...

> I understand that if the funds were knowingly used for unauthorized purposes, the federal government may pursue recovery of loan amounts and/or civil or criminal fraud charges.

> The information provided in this application and the information provided in all supporting documents and forms is true and correct in all material respects. I understand that knowingly making a false statement to obtain forgiveness of an SBA-guaranteed loan is punishable under the law, including 18 U.S.C. 1001 and 3571 by imprisonment of not more than five years and/or a fine of up to $250,000; under 15 U.S.C. 645 by imprisonment of not more than two years and/or a fine of not more than $5,000; and, if submitted to a Federally insured institution, under 18 U.S.C. 1014 by imprisonment of not more than thirty years and/or a fine of not more than $1,000,000.

## MATERIALITY ALLEGATIONS

87.    Upon information and belief, prior to receiving notice of Relator's allegations, the United States was unaware of the false and fraudulent Form 2483 Defendants submitted, or caused others to submit, to Northeast Bank and the SBA.

88.    Upon information and belief, a PPP borrower's affirmation and certification that it was eligible to receive a PPP loan under the SBA rules in effect at the time the application was submitted and met the program's financial need requirements were material to the SBA's decisions to make PPP funds available to borrowers and to forgive their PPP loans.

89.    Specifically, not truthfully and accurately disclosing a borrower's status as a mortgage company that held mortgages for more than 14 days and the fact that current economic uncertainty did not make a PPP loan necessary to support the ongoing operations of the applicant were material to the SBA's PPP lending and forgiveness decision-making process.

## FACTUAL ALLEGATIONS CONCERNING AFR'S PPP FRAUD

90.    The following allegations are made upon information and belief because Relator does not have, and cannot presently obtain, Defendants' loan application, forgiveness forms, and related information and materials.

## AFR PPP Loan

91.    On or before April 28, 2020, Defendants submitted, or caused the submission of, Form 2483 in the name of AFR to Northeast Bank for a $5,108,500 first draw PPP loan based on the targeted retention of 310 jobs.

92.    AFR's Form 2483 affirmed that AFR was eligible to borrow PPP funds.

93.    In fact, at the time of its PPP loan application submission, AFR was an ineligible mortgage lender that held mortgages for more than 14 days.

94.    Defendants knew AFR was a mortgage lender that held mortgages for more than 14 days and thus was ineligible for PPP funding at the time AFR's Form 2483 was submitted to Northeast Bank.

95.    On or about April 28, 2020, Defendants' PPP loan application was approved. The SBA loan number was 7035987204.

96.    Shortly after April 28, 2020, AFR received $5,108,500 in PPP loan funds.

97.    Prior to January 31, 2022, Defendants submitted, or caused the submission of, a Form 3508 to Northeast Bank seeking forgiveness of AFR's PPP loan and accrued interest.

98.    On or about January 31, 2022, SBA partially forgave the principal and accrued interest for AFR's PPP loan, in the total amount of $4,837,748.

## MATERIALITY

99.    SBA rules and regulations in effect at the time AFR's PPP loan was forgiven precluded mortgage lending firms, such as AFR, from lawfully receiving and retaining first-draw PPP loan proceeds.

## FACTUAL ALLEGATIONS CONCERNING SCIENTER

100.    The PPP laws, rules, regulations, and forms relevant to this action are clear and unambiguous, including the bar on mortgage lenders that held mortgages for more than 14 days receiving SBA business loans generally and PPP loans specifically.

101.    SBA published clear and authoritative guidance through SOPs confirming that mortgage lenders who held mortgages for more than 14 days were ineligible for first-draw PPP loans.

17

102.    Various websites, including those of the SBA, law firms, accountants and consultants, make clear during the first draw PPP era that mortgage lending companies that held mortgages for more than 14 days were ineligible for PPP loans.

103.    AFR website establishes that AFR is a mortgage lender.

104.    Bankruptcy and foreclosure proceedings involving AFR indicate that AFR holds a substantial number of the mortgages it originates well past the 14-day limit set forth in SOP 50 10.

105.    Upon information and belief, Defendants never contacted SBA to ask if AFR was eligible for a PPP loan and/or were advised by SBA that AFR was eligible.

## CLAIMS FOR RELIEF

## COUNT I

### As to All Defendants

#### Violation of 31 U.S.C. § 3729(a)(1)(A)  (False or Fraudulent Claims)

106.    Relator realleges and incorporates all allegations in this Complaint as though fully set forth herein.

107.    The FCA imposes liability on any person who, among other things, knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval. 31 U.S.C. § 3729(a)(1)(A).

108.    Through the acts described above, and otherwise, Defendants, by and through their employees, agents, and representatives, knowingly, or acting with deliberate ignorance and/or with reckless disregard for the truth, presented, or caused to be presented, to an SBA-authorized PPP lender and to an officer or employee of the SBA, a false or fraudulent Form 2483 and related loan materials and information, all in violation of 31 U.S.C. § 3729(a)(1)(A).

109.    As a result of the foregoing activities, the United States suffered economic damages.

## COUNT II

### As to All Defendants

### Violation of 31 U.S.C. § 3729(a)(1)(B)  (False Records or Statements)

110.    Relator realleges and incorporates all allegations in this Complaint as though fully set forth herein.

111.    The FCA imposes liability on any person who, among other things, knowingly makes, uses, or causes to be made or used a false record or statement material to a false or fraudulent claim. 31 U.S.C. § 3729(a)(1)(B).

112.    Through the acts described above and otherwise, Defendants, by and through their employees, agents, and representatives, knowingly, or acting with deliberate ignorance and/or with reckless disregard for the truth, used or caused to be made or used a false record or statement material to a false or fraudulent claim, namely by making and submitting the above-described Form 2483 and supporting loan documentation to an SBA-authorized PPP lender and to the SBA, all in violation of 31 U.S.C. § 3729(a)(1)(B).

113.    As a result of the foregoing activities, the United States suffered economic damages.

## COUNT III

### As to All Defendants

### Violation of 31 U.S.C. § 3729(a)(1)(G)  (Wrongful Retention)

114.    Relator realleges and incorporates all allegations in this Complaint as though fully set forth herein.

115.    The FCA imposes liability on any person who knowingly makes, uses, or causes to be made or used a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government. 31 U.S.C. § 3729(a)(1)(G).

116.    Through the acts described above, and otherwise, Defendants, by and through their employees, agents, and representatives, knowingly, or acting with deliberate ignorance and/or with reckless disregard for the truth, wrongfully retained overpayments on the AFR PPP Loan by obtaining SBA forgiveness of the principal amount and accrued interest, all in violation of 31 U.S.C. § 3729(a)(1)(G).

117.    As a result of the foregoing activities, the United States suffered economic damages.

**PRAYER FOR RELIEF**

WHEREFORE, pursuant to 31 U.S.C. § 3730(b), acting on behalf of, and in the name of, the United States and on his own behalf, Relator demands and prays that judgment be entered in favor of the United States and Relator and against Defendants as follows:

**As to Counts I, II and III**

1.    On behalf of the United States, for:

a.    Treble the amount of the United States' damages, plus the maximum statutory penalties for each false claim or false statement;

b.    All costs of this civil action; and

c.    Prejudgment interest.

2.    And further, on his own behalf, Relator demands and prays that an award be made in his favor for:

        d.      25 percent (25%) of any recovery by the United States if it intervenes in and conducts this action, or 30 percent (30%) of any recovery if the United States does not intervene;

        e.      An amount for reasonable expenses necessarily incurred by Relator in prosecution of these claims and all reasonable attorneys' fees, expenses, and costs incurred by Relator in pursuing these claims; and

        f.      Such other and further relief to which this Court determines Relator is entitled.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38, Relator demands that this case be tried before a jury.

Respectfully submitted,

McMORAN O'CONNOR BRAMLEY & BURNS
A Professional Corporation
Ramshorn Executive Centre
Building D, Suite D-1
2399 Highway 34
Manasquan, New Jersey 08736
Attorneys for Relator,
Aidan Forsyth

By: _____
MICHAEL F. O'CONNOR
Bar No. 047401995

McINNIS LAW
Timothy J. McInnis, Esq.
521 Fifth Avenue 17th Floor
New York, New York 10175-0038
Attorneys for Relator,
Aidan Forsyth

*Pro Hac Vice to be Applied for*

Dated: July 14, 2023.

22